## Incorporation of West Hamburg Borough.

*Ira P. Rothermel* and *John G. Rothermel*, for petitioners.

*E. H. Deysher*, for remonstrants.

MAYS, J., September 2, 1930.—On November 8, 1929, a petition was presented, signed by sixty resident freeholders, ten nonresident freeholders, and

forty-six qualified electors residing within the limits of the proposed borough who are not freeholders, setting forth that the village proposed to be incorporated as a borough contains a collection of houses collocated after a regular plan in regard to roads, streets and lanes; that the said village contains not more than seventy resident freeholders, and that the petitioners are desirous of having said village incorporated under the style and title of "The Borough of West Hamburg," according to the plan or draft appended to the said petition, and as described by metes and bounds in said petition.

Said petition was directed to be filed with the clerk of said court, whereupon advertisement was duly made that the application would be presented on December 21, 1929. On January 31, 1930, a remonstrance was presented and permission granted to file the same. In accordance with the practice of this court in matters of this kind, a hearing was had and testimony heard on January 30, 1930, and on February 6, 1930, a further hearing was had, at which time it was urged by counsel for petitioners that, owing to the delay in excepting to or remonstrating against the said incorporation, the objections raised should not be considered by the court. We did not then, and cannot now, so determine. The General Borough Act of May 4, 1927, P. L. 519, section 204, after directing the filing of the application and the giving of notice, states, inter alia, that "The court, at said term, if it shall find that the conditions prescribed by this article have been complied with, may grant the prayer of the petitioners and make a decree accordingly, but, if the court shall deem further investigation necessary, it may make such order thereon as to right and justice shall appertain."

A proceeding such as this does not make time materially essential. The court has equitable powers. The question here is the expediency of the decree sought by the petitioners. There are a number of cases, Smithfield Borough, 23 Pa. C. C. 583, being one of them, where exceptions were permitted to be filed after the time at which the proceedings were advertised for hearing, Judge Umbel in the case cited saying: "We feel warranted in considering the questions raised by the exceptions in like manner as if the exceptions had been filed within the thirty-day limit."

The General Borough Act, supra, provides, in section 206: "When, in any application, the boundaries fixed by the petitioners shall embrace lands exclusively used for the purposes of farming, the court may, if it deem such land does not properly belong to the proposed borough, at the request of the party aggrieved, change the boundaries so as to exclude therefrom the land used for farming purposes."

The major portion of the land within the limits of the proposed borough is used exclusively for farming purposes. No change or modification of said plan has been applied for. All of the owners of the farm lands have joined in the prayer of the petition. Accordingly, the case presented requires the approval or rejection of the application for a borough as an entirety.

In Borough of Little Meadows, 35 Pa. 335, the Supreme Court held: "The courts have no power to incorporate a village so as to include within the boundaries of the corporation a large body of surrounding farm lands." This case has been distinguished and somewhat modified, but not to the extent that we could entirely ignore the fact that farm lands are included within the limits of the proposed borough. In Borough of Blooming Valley, 56 Pa. 66, it was held that a charter would not be refused merely because adjacent farm lands, the owners of which joined in the petition, were embraced, and, further, that the extent and character of the land are not per se controlling objections, if the parties to be affected are willing to be included, but that the

court should in these respects exercise a sound discretion. In Tullytown Borough, 11 Pa. C. C. 97, the court, after pointing out that it had a discretion to grant a charter even though the proposed borough included lands used exclusively for farming purposes, stated that such discretion should be exercised with care and with due regard for the rights of all the parties to be affected.

A view of the territory discloses the weakness of this application. It would require a flight of the imagination to call all of the land embraced within it, most of which is used for agricultural purposes, borough territory. These farm lands do not properly belong to nor constitute a part of the village of West Hamburg. It is rather significant too that practically all of the farm land is not connected by lines or buildings or improvements with the village of West Hamburg. In Incorporation of Highspire Village, 12 Dist. R. 272, 276, Judge Weiss said: "The proposition that 674 acres of land are necessary for corporate uses and the proper administration of the affairs of the municipality, composed of 1200 or 1500 people, refutes itself." More confidently may we say that the proposition that 486 acres and 10¾ perches of land are necessary for corporate uses and the proper administration of the affairs of the municipality, composed of 270 people, refutes itself. We must, therefore, conclude that it would be an abuse of discretion to grant this charter. While the appellate courts will not ordinarily review the discretion of the lower court if it should include farm lands in the incorporation of a borough, yet the Superior Court has intimated that it would do so in a case where it appears from the testimony that the lands are not reasonably appurtenant to the built-up section, and that the expansion of the borough would not be in the direction of the farm lands in question: South Connellsville Borough, 47 Pa. Superior Ct. 350.

The foregoing would be sufficient to dispose of the case; but it may be well· to express our views on the expediency of the application.

The village of West Hamburg is situated immediately west of the western boundary line of the Borough of Hamburg, on the Schuylkill River, in the Township of Tilden, this county. The chief industry is the Berks Foundry and Manufacturing Company. There is also a marble works and the Hamburg Station of the Philadelphia and Reading Railway Company. The total acreage of the proposed borough is 486 acres and 10¾ perches of land, upwards of 400 acres being land suitable and used for agricultural purposes. It has between three and four miles of roadway, and contains forty-four dwelling houses, twenty-four being collocated on both sides of a state highway. There are seventy resident freeholders, sixty of whom signed the petition for incorporation. The total population is approximately 270. The assessed valuation of the property is $150,000.

The Township of Tilden has about forty-five miles of roadway, and the total assessment is as follows: Value of property and persons taxable for county purposes, $591,658; value of all land, including exempt property, $583,658; value of exempt property, $46,400. The tax rate is 35 mills, exclusive of a $5 poll tax. The remonstrants, with the exception of one, reside in Tilden Township outside of the village of West Hamburg.

The petitioners have filed no specific reasons in support of the application. Their contention, however, according to the testimony and argument, is in effect that there should be—

(a) A general plan of streets, called by the petitioners a topographical survey. (b)· Legislation enacted to the end that uniform sidewalks, streets, lines and grades may be established. (c) More adequate police protection

and traffic regulation. (d) A more adequate supply of water for domestic use and fire protection. (e) A utilization of tax money in the repair of roads traversing the territory of the proposed borough—petitioners particularly stressing what they contend to be a fact, viz., that presently tax moneys are used by the supervisors of Tilden Township in improving roads in sections other than the village of West Hamburg.

The following we believe is a complete answer to all of the contentions so made:

(a) The general plan of streets and alleys of a borough, commonly called a topographical survey, includes not only the streets and alleys opened, but also those which have been laid out but not opened. It is a plan or map which represents the physical features of the locality or region with accuracy. If we had here the compactness usually associated with a borough, and a physical layout of streets, roads and lanes, we could then probably understand that there would be some necessity for a topographical survey. However, in the absence of a considerable number or collocation of houses, and a number of streets, roads and lanes having their termini within the proposed borough, we are compelled to say that such a survey, if required, should be caused to be made by the owners of property and at their expense. There is nothing in the testimony informing us as to what would be the probable cost of making a survey and preparing a plan. We know, however, from what experience we have had in the organization of boroughs, that the cost would nearly, if not entirely, consume the taxes based on a 10-mill rate and an assessment of $150,000.

(b) Authority has been given to the supervisors to establish the width and location of and to construct sidewalks—see sections 1040 and 1041 of the General Township Act of July 14, 1917, P. L. 840, as amended by the Act of June 29, 1923, P. L. 916; also authority to grade, pave or macadamize public highways—see Act of April 28, 1927, P. L. 496.

(c) The testimony fails to show that this proposed borough is without adequate police protection and in need of traffic regulation. It is sufficient to say that a substation is maintained by the State Constabulary in the Borough of Hamburg, and that the Vehicle Code provides adequate means for regulating traffic in the village of West Hamburg. If it is within the contemplation of the petitioners that the borough should maintain a policeman, they have failed to point out how such an expenditure could be cared for out of the current revenues of so small a borough.

(d) The Act of 1917, *supra*, section 386 (III), gives to the supervisors authority to install fire hydrants. The Act of April 18, 1929, P. L. 616, provides a method for the purchase and maintenance of fire apparatus. The Act of March 20, 1929, P. L. 33, provides a method for the establishment of a water supply and waterworks.

The source of water supply intended to be used by the proposed borough is located at a point a considerable distance from the village of West Hamburg. To make this available, and to insure a proper distribution of water, many thousands of feet of pipe line would have to be laid. We shall not undertake to state what would be the cost of this work, but it is fair to assume that it would be considerable—at least an amount so large that it could not be paid out of current revenues. If it were to be done by the proposed borough by a per front foot assessment, the cost thereof would be burdensome to the property owners.

(e) The main road traversing this proposed borough is a state highway which is now maintained by the state, and will be so maintained, whether the

charter be granted or not. If the proposed borough were to lay out and open streets and roads according to a definite plan, it would be without sufficient revenue to pay therefor; if at the cost of the property owners on a per front foot basis, it would be rather burdensome. The roads in the territory within the limits of the proposed borough are in as good condition as those in the remainder of the Township of Tilden.

There are other considerations, some urged upon us by those opposing the grant of the charter, which compel the conclusion that it would be inexpedient to grant the prayer of this petition, viz.:

1. The incorporation of the borough would deprive the Township of Tilden of approximately one-fourth of its road taxes, while relieving it of the care of only about one-tenth of its township roads.

2. The incorporation of the borough would retard the improvement of the township and place an undue burden of taxation upon the inhabitants of the remainder of the municipality.

3. The proposed Borough of West Hamburg, as we have already pointed out, lacks that compactness which is usually associated with a borough. It is true that there is a collocation of houses, but there is an absence of what is stated in the petition as "a regular plan in regard to roads, streets and lanes."

4. The formation of a borough would add considerable expense to the taxpayers of the new municipality. Provision would have to be made for the salaries of a burgess, a borough treasurer and auditors and for the advertising of ordinances. These increased burdens must be taken into consideration in determining whether or not it is expedient to incorporate. What would be the status of this borough with a tax rate of 10 mills, based upon an asessment of $150,000? The income per year would be $1500. After paying for the topographical survey, advertising ordinances and other incidental expenses, there would be no surplus for the repair of roads and the making of improvements. A loan of $3000, 2 per céntum of the assessed valuation of taxable property, would be quickly consumed.

In addition to the cases already cited as authority in support of the conclusions arrived at, see In the Matter of the Petition for the Incorporation of the Village of Gilbertsville into a Borough, 43 Montg. Co. L. R. 177, and In the Matter of the Application of Freeholders of the Village of Linfield for the Incorporation of the Village into a Borough, 45 Montg. Co. L. R. 167, which have been very helpful to us in disposing of this matter.

We have not overlooked the fact that the freeholders of the proposed borough are almost unanimously in favor of the incorporation. The Supreme Court has pointed out that this is not controlling. In Prospect Park Borough, 166 Pa. 502, it was held: "The question of necessity or expediency of incorporating a village and adjacent territory into a borough does not depend so much upon the will of a majority of the freeholders residing outside the limits of the proposed borough, or upon the unanimous consent of those residing within the proposed lines, as it does upon the fact that the advantages to the whole people, as a community, will overbalance the disadvantages."

All the members of this court, after viewing the proposed borough and carefully considering the evidence, are of the opinion that any advantage to be gained by incorporation is overbalanced by the obvious disadvantages to the whole people of Tilden Township as a community.

And now, to wit, September 2, 1930, the petition is dismissed.

From Charles K. Derr, Reading, Pa.